THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* VÍCTOR E. RIVERA ARROYO, Defendant and Appellant.

No. CR-70-137.      Decided June 14, 1971.

---

Luis A. Archilla Laugier for appellant. *Gilberto Gierbolini, Solicitor General, Héctor R. Orlandi Gómez, Assistant Solicitor General,* for The People.

PER CURIAM: Appellant, Víctor E. Rivera Arroyo, was accused and convicted of driving a motor vehicle under the influence of intoxicating liquor (§ 5-801 of Act No. 141 of July 20, 1960—9 L.P.R.A. § 1041). He was imposed a $150 fine or 15 days in jail and his driver's license was suspended for a period of one year. Later on the trial judge amended the sentence in order to set aside the additional eight-month suspension of the driver's license for unjustifiably refusing to submit himself to the chemical analysis, in view of our decision in *People* v. *Ortega Otero,* 97 P.R.R. 465 (1969).

The evidence for the prosecution consisted of the testimony of Dionisio Rosas González and that of policeman Luis Daniel Rivera. The former explained that upon taking a semicurve on a Guaynabo road he noticed that a Volkswagen driven by appellant approached, that the latter stopped at the shoulder of the highway and when he started again he hit the witness' vehicle on the left front fender; that *appellant's eyes were red "but he was not drunk . . . he was somewhat upset . . . he did not want to accept guilt or anything . . . . We were*

*arguing . . . for about 15 to 20 minutes . . . the policeman
arrived at about that time."* (Italics ours.)

*Policeman* Rivera *testified* that when he arrived at the
scene of the accident he proceeded to talk with the drivers
of the vehicles involved in the accident; that "when I talked
with the driver of the Volkswagen [appellant] *I noticed that
he smelled strongly of liquor . . .* and then *he stammered as
he spoke to me,* reason why I was able to notice that he was
drunk." (Italics ours.) When questioned, he said that he was
more or less at a distance of about from the witness stand to
the trial judge's chair in the courtroom. He also testified that
he told appellant that "I was going to bring an action against
him for being under the effects of intoxicating liquor and I
made the pertinent legal warnings . . . whether he wanted
to voluntarily submit himself to the taking of the blood or
urine . . . . He refused . . . I put him in the patrol car . . . .
In order to take him to the hospital to see whether on the
way he made up his mind to have the sample taken . . . he
refused" and then I told him that, "if he refused, when the
case was brought the magistrate could retain his license until
the day of the trial, and if he was found guilty or not guilty,
the magistrate could suspend his license for two years also . . .
I proceeded to take the case to the Court of Investigations."
On cross-examination he testified that *"I told him to show me
the driver's license and the vehicle's license, he gave it to
me"* he took it from *"His pocket, I suppose . . . he also told
me* that *he had hit that youth's car because I think* that youth,
*I think that he had switched on the high lights or something
like that . . . . He told me the address* [where he lived]."
(Italics ours.)

Appellant testified in his defense that "what happened
that day was that I went to Corozal, to see my mother who
was alone, and then coming back, since it was Saturday and
during those days the traffic flow was heavy, and since I live
in Río Piedras, I had to use that road, and at the moment of

the events what happened was that a car was coming behind me, it wanted to pass, I stopped and it passed, and then when I was on a semicurve further on, a car, dazed me with its lights and we collided . . . then the two of us alighted, I asked him whether there was any problem or something, and he told me that nothing had happened, and I became a little nervous, besides I was, my wife was here, and my hands shook as they are shaking now and we were talking, and I told him not to worry, that we ought to settle everything, and he said no, and *the policeman arrived at that moment, he saw me and told me 'the matter with you is that you are drunk, come on, let's take you away,'* and I got more nervous, my wife alone back here, nobody wanted to tell her, and I got more nervous and then they took me away." (Italics ours.) He denied having been warned by the policeman. He said that from the scene of the accident the policeman took him to the police station and then to a magistrate. *Asked whether his eyes are always reddish,* he answered that "well, the only thing I do is to read cases and more cases." On *cross-examination he denied having imbibed any alcoholic beverage; that "if I am going to study at night I could not take any [drink] . . . it would not be logical";* that upon arrival the policeman told him "the matter with you is that you are drunk"; he admitted that he was taken to a physician; that "they spoke to him about the blood" and that there he denied being drunk. (Italics ours.)

There was no evidence to the effect that appellant observed an antisocial conduct.

■ The evidence in this case is almost identical to the evidence adduced in *People* v. *Zalduondo Fontánez,* 89 P.R.R. 63, 65–66 (1963) and less robust than the evidence in *People* v. *Díaz Just,* 97 P.R.R. 56, 61 (1969), and *People* v. *Galleti Rodríguez,* 88 P.R.R. 275, 277, 278 (1963).[1] See also, *People*

---

[1] Compare the evidence adduced in *Galleti, supra,* with the evidence presented in *People* v. *Eliza Colón,* 95 P.R.R. 657 (1968), where we affirmed the conviction for driving under the influence of intoxicating liquor.

v. *Toro Rosas*, 89 P.R.R. 166, 172 (1963). In these cases we reversed the judgment of conviction because the evidence did not establish the guilt beyond a reasonable doubt. For this same reason we conclude that the judgment in this case should be reversed.

■ We deem it convenient to clarify the point concerning the two reasons for which, under the Vehicle and Traffic Law it is proper to suspend the driver's license in these cases. The penalties provided by the act to punish the offense of driving a motor vehicle under the influence of intoxicating liquor are established in § 5-802 of the act, 9 L.P.R.A. § 1042. Subdivision (a) of said section establishes a fine or jail, or both penalties, for the first violation. Subdivisions (b) and (c) of said section provide other penalties when other circumstances concur.

Subdivision (d) of said § 5-802 of the act, 9 L.P.R.A. § 1042 (d), provides in a *mandatory* manner that in the case of a first conviction the court shall decree, in addition to the above penalties, the suspension of the driver's license for a period of not less than one year nor more than two. In case of recidivism, the revocation shall be permanent. That subdivision (d) also provides for any nonresident.

■ In another section of the act, § 5-804, 9 L.P.R.A. § 1044, the procedure to be followed when the arrested person refuses to submit himself to the chemical analysis is established. Subdivision (c) of said section provides that at the time of the trial, if the judge finds that the defendant was not justified in refusing to submit himself to the chemical analysis to which § 5-803 of the act refers, the judge *shall* order the suspension of the license for a term of not more than two years.

■ What is described above comprises two different situations. The first refers to the commission of the offense of driving a motor vehicle under the influence of intoxicating

liquor. The second circumscribes itself to determine whether or not the defendant was justified in refusing to submit himself to the chemical analysis. That is why it is possible for a defendant to be convicted and punished for the first and not for the second, and inversely, it is possible for him to be acquitted of the offense of driving under the influence of intoxicating liquor even though his license is suspended because the judge finds that the defendant was not justified in refusing to submit himself to the chemical examination. *People* v. *Otero Valle*, 89 P.R.R. 71, 78–79 (1963).

In view of the grounds indicated, the judgment rendered in this case should be reversed and appellant acquitted.

Mr. Chief Justice Negrón Fernández, Mr. Justice Hernández Matos, and Mr. Justice Pérez Pimentel did not participate herein.